MANUEL, EMILIO, CARMEN ROSA, EMILIA, JOSEFA, JOSÉ, RICARDA y MIGUEL ANGEL NÁTER GIRONA y MANUEL, RAMÓN, MONSERRATE y JOSEFA NÁTER CORBET; JOSÉ NÁTER GARCÍA; JOSÉ NÁTER CARRERAS y JOSÉ NÁTER CHIESA, demandantes y apelantes, *v.* INÉS NAVEDO DÁVILA, TRINIDAD DÁVILA NÁTER y PILAR CORREA NAVEDO, demandadas y apeladas.

No. 4613.—*Sometido:* Mayo 9, 1929. *Resuelto:* Junio 24, 1929.

788

*Feliú & La Costa,* abogados de los apelantes; *José Martínez Dávila,* abogado de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Versa este pleito sobre reivindicación de bienes inmuebles y se funda especialmente en la alegada nulidad de cierto poder para testar otorgado en 1866 en Vega Baja ante el notario Félix Lajara por los esposos Manuel Náter Marrero e Inés Navedo Dávila, del cual hizo uso la esposa a la muerte del esposo ocurrida en 1894.

Los demandantes son parientes colaterales del Sr. Náter Marrero y no hay duda alguna que a no ser por la indicada escritura de 1866 y por el acto realizado por doña Inés en 1894, una parte de la herencia de Náter les hubiera correspondido.

La demanda fué contestada cuidadosamente por las demandadas y entre las varias defensas que establecieron está la de cosa juzgada.

Fué el pleito a juicio, y al tomarlo bajo su consideración la corte de distrito si bien decidió que no procedía la defensa de cosa juzgada, resolvió que aplicando la regla establecida por esta Corte Suprema en el caso anterior invocado —*Landrón et al. v. Navedo,* 12 D.P.R. 264—debía declararse la demanda sin lugar.

Parece conveniente transcribir lo que sigue de la relación del caso y opinión de la corte de distrito. Es así:

"En esta demanda se plantean exactamente las mismas cuestiones legales que en el caso del Tribunal Supremo a que anteriormente me he referido, o sea, si era o no válido el poder para testar otorgado por don Manuel Náter y Marrero a favor de su esposa doña

Inés Navedo Dávila, y, por consiguiente, si era o no válido el testamento otorgado por ésta en virtud del poder conferido.

"Ninguna de las partes aquí demandantes compareció en el caso anteriormente citado, resuelto por la Corte Suprema de Puerto Rico, y por ese motivo entiendo que no procede resolver que es aplicable a esta situación la doctrina de *res judicata,* puesto que para eso sería necesario que concurrieran las circunstancias que especifica el artículo 1219 del Código Civil, al efecto de que existía perfecta identidad entre las cosas objeto del pleito y las personas litigantes y su capacidad como tales. En este caso existe perfecta identidad de todo menos de personas litigantes; y aun en cuanto a esto, el pleito original fué presentado por los descendientes y alegados co-herederos, aun cuando es cierto que en dicho pleito reclamaban la participación que a ellos correspondía.

"Los demandantes solicitan que se revise la resolución dada por el Tribunal Supremo en este caso, y nos citan jurisprudencia que a su juicio sería suficiente para justificar una resolución distinta en este caso de la que recayó en caso anterior.

"Entiendo que para las Cortes de la isla, la jurisprudencia del Tribunal Supremo de Puerto Rico es obligatoria, y tendría que ser un caso muy singular y extremoso, en el cual una Corte de Distrito se sintiera justificada para apartarse de las reglas de conducta y de las normas de la ley adoptadas por nuestro Tribunal superior, y las cuales venimos obligados a respetar y sostener.

"Si alguna jurisprudencia podría tener peso en este caso como precedente para esta Corte, necesariamente tendría que ser la sentada en el caso de Landrón vs. Navedo, *supra,* puesto que se establecen las teorías adoptadas por el Tribunal Supremo en circunstancias de hecho idénticas a las presentes. De modo que puede decirse que es un precedente que lleva consigo todo el peso que a esas circunstancias acompaña.

"Me permito citar lo siguiente:

" 'The reports of judicial decisions contain the most certain evidence and the most authoritative and precise application of the rules of the common law. Adjudged cases become precedents for the cases resting upon analogous facts and brought within the same reasons. A solemn decision upon a point of law arising in any given case becomes an authority in a like case, because it is the highest evidence which we can have of the law applicable to the subject and the judges are bound to follow that decision so long as it stands unreversed, unless it can be shown that the law was misunderstood and misapplied in that particular case.' Véase 'Ram on Judgments.'

" 'Judicial precedent is not simply law in a general sense but it is a part of our law in a sense, and with effects which are distinctively and most strikingly peculiar. The doctrine, as established, is simply this: That a decision by a court of competent jurisdiction of a point of law lies so scarcely in the pathway of judicial judgment, that the case could not be adjudged without deciding it, is not only binding upon the parties to the cause in judgment, but the point so decided becomes, until it is reversed or overruled, evidence of what the law is in like cases, which the courts are bound to follow, not only in cases precisely like the one which is first determined, but also in those which, however different, in their original or special circumstances, stand or are considered to stand upon the same principles.' Véase 'Dillon on Laws and Jurisprudence,' página 231.

"Después de leída esa cita, véase si es posible que esta Corte revise este caso, cuando en realidad debe aplicar al mismo la jurisprudencia sentada por el Tribunal Supremo.

"Teniendo en cuenta las anteriores consideraciones, entiendo que no es esta Corte la llamada a revisar o adoptar nuevas doctrinas distintas de aquellas que hayan sido adoptadas por nuestro Tribunal Supremo y, por estas razones, entiendo que no procede entrar a considerar las cuestiones levantadas por los demandantes; y, por el contrario, se declara sin lugar la demanda, fundándose única y exclusivamente en la resolución dictada por el Tribunal Supremo de Puerto Rico en el caso arriba mencionado."

El poder para testar puesto en tela de juicio, lee, en parte, así:

"Número 312.—Don Manuel Náter y su legítima esposa doña Inés Navedo.—Poder recíproco para testar.

"En Vega Baja, a veinte y seis de noviembre de mil ochocientos sesenta y seis.—Ante mí el Escribano y testigos que se expresarán, comparecieron, en su casa habitación, donde me constituí, a instancia de parte, Don Manuel Náter y su legítima esposa Doña Inés Navedo, de este vecindario a quienes doy fe conozco y dijeron:

\* \* \* \* \* \* \*

" . . . otorgan: que recíprocamente se confieren tan amplio poder como es necesario para que el sobreviviente de ellos, fuera o dentro del término legal, formalice y ordene su testamento y última voluntad, declaración o disposición de pobre, según el caudal que deje, haciendo en él los legados que le pareciere, así como las remi-

siones de deudas, descargo de su conciencia y demás cosas que se tienen comunicadas y se comunicarán en lo sucesivo, * * * *

* * * * * * *

"Y por el presente revocan y anulan todos los testamentos y demás disposiciones testamentarias que antes de ahora hubiesen formalizado por escrito o de palabra para que ninguno valga ni haga fe judicial ni extranjudicialmente, excepto este poder y testamento que en su virtud se ordene, que quieren y mandan se estime y tenga por tal y se observe y cumpla todo su contenido como su última deliberada voluntad. Así lo disponen, otorgaron y firman, siendo testigos Don Ramón Pérez, Don Francisco Bolarín y Don Aciselo Corbet: vecinos; de que doy fe.—Firmado: Inés Navedo de Náter.—Manuel Náter.—Ante mí, signado y firmado: José Félix Lajara.—Ecño. R. y ppcc."

En su alegato los demandantes apelantes hacen grandes esfuerzos para distinguir este caso del de *Landrón et al. v. Navedo, supra,* sin conseguirlo, a nuestro juicio. Una simple lectura de la decisión de esta corte en dicho caso convence de que la verdadera cuestión en él envuelta y decidida fué la de si el poder de 1866 y el testamento de 1894 eran nulos o válidos.

El único nuevo motivo de nulidad que en este pleito se alega es el de que el poder para testar de 1866 "considérese como tal poder o como testamento de cualquiera de los otorgantes es absolutamente inexistente, nulo e ineficaz porque faltan en él las firmas de los testigos."

Un estudio cuidadoso de la jurisprudencia citada por la propia parte apelante nos lleva a concluir que la falta de las firmas de los tres testigos que estuvieron presentes al otorgarse la escritura, no afecta a su validez.

En el caso de *Sucn. Igaravídez* v. *Rubert Hnos.,* 23 D. P.R. 293, 311, esta corte se expresó así:

"Otra de las ilegalidades de la hipoteca que ha sido alegada es que en ella no hubo testigos instrumentales. Poca duda puede haber acerca de cuál era la verdadera ley respecto a esta cuestión, aunque parece que la práctica contemporánea prácticamente constituyó en letra muerta el precepto del estatuto. Además, en la sentencia de la corte inferior se declara que de prevalecer esta cuestión refe-

rente a la falta de firma de testigos instrumentales todo el pleito tiene que fracasar, pues algunas de las mismas escrituras originales otorgadas a la Sucesión de López carecían de la firma de testigos instrumentales. Las cortes en esa fecha evidentemente toleraban la falta de firma de testigos instrumentales y esa interpretación contemporánea debe ser respetada.''

Los comentaristas hablan siempre de la necesidad de la presencia de los testigos, pero no de sus firmas. Lo mismo la jurisprudencia. En el alegato de la parte apelada se transcriben dos viejos modelos que se dicen tomados de la obra ''Cartilla Real'' de D. Santiago Alvarado, publicada en 1836.

El primero, que figura a la página 252, es así:

''Éste es mi último codicilo y postrimera voluntad, el cual quiero valga por mi codicilo, o por aquel derecho de mi última testamentaria disposición que por leyes reales más pueda valer y deba. Y para más abundamiento mando que todo lo susodicho se guarde, cumpla y ejecute.—Así lo otorgó en tal parte a los . . . etc., siendo presentes por testigos N., N. y N., vecinos de dicha tal parte.—Y el codicilante (a quien yo el Escribano doy fe conozco, lo firmó.)''

El segundo, que aparece a la página 264, lee como sigue:

''Y desde luego revoca y anula otros cualesquiera testamentos o disposiciones, codicilos y demás que antes de ahora haya hecho por escrito, de palabra o en otra forma, para que no valgan ni hagan fe en juicio ni fuera de él; pues quiere que sólo el que en virtud de este poder se otorgare, valga por mi testamento o por mi codicilo, en aquella vía y forma que mejor hubiere lugar en derecho.— Así lo otorgó en tal parte, a tantos, siendo testigos N., N. y N., vecinos de la misma, etc.—Y el otorgante, a quien yo el Escribano doy fe conozco, lo firmó (o no) haciéndolo a su ruego uno de dichos testigos.''

En el tratado de Notaría de Manuel Fernández Casado se dedica todo un capítulo al examen de los precedentes, disposiciones legales y comentarios sobre la firma de los documentos públicos. De él tomamos los dos párrafos que siguen:

''Esta oscuridad de la ley promovió largas y eruditas discusio-

nes en la prensa profesional de aquel tiempo, y el reglamento de 1862, ateniéndose sin duda al artículo 29 de la ley, declaró en su artículo 75: 'Si los otorgantes supieren firmar, no será necesario que firmen los testigos, ni que haya uno que sepa hacerlo.' Antes, en el artículo 73, había dicho; 'pero, si los otorgantes o alguno de ellos no supiere o no pudiere firmar, lo expresará así el Nota rio, debiendo firmar uno de los testigos, escribiendo de su puño en la antefirma que lo hace por sí como testigo y a nombre del otor gante o *testigo* que no sepa o no pueda verificarlo.' Este artículo tampoco está en armonía con la ley ni con el 75 del reglamento, pues de su lectura se desprende que cuando alguno de los otorgantes no firme deben hacerlo ambos testigos instrumentales, firmando uno de ellos a ruego del otro si éste no supiere. De manera que, según los artículos 17 y 25 de la ley, parece que en todo caso deben firmar los testigos, háganlo o no los otorgantes; según el 27, hay casos en que los testigos no deben firmar; según el 75 del reglamento de 1862, cuando los otorgantes firmen no es menester que lo hagan los testigos instrumentales, y según el 73, cuando algún otorgante no firmare deberán firmar ambos testigos, haciéndolo uno de ellos *por sí* y a ruego de aquel otorgante; y si tampoco sabía firmar uno de los testigos, el otro debía firmar por él y a su ruego. Vése, pues, que los redactores de la ley y los del reglamento no tuvieron un criterio fijo respecto de la necesidad de la firma de los testigos instrumentales.

"Estas disposiciones inarmónicas fomentaron las discusiones so bre la materia y dieron lugar a diversas prácticas entre los Nota rios, determinando la necesidad de una disposición aclaratoria que fijase para siempre punto tan importante. Formaron al efecto el oportuno expediente, en el que, visto el parecer de la Sala de Go bierno del Tribunal Supremo de Justicia, y oída la Sección de Es tado y Gracia y Justicia del Consejo de Estado, por Real orden de 25 de junio de 1868 se resolvió: '1º, que es necesaria en las escrituras matrices la firma de los testigos instrumentales o de cono cimiento en su caso, siempre que sepan hacerlo; y 2º, que si un testigo o los otorgantes o alguno de éstos no supiere firmar, al verifi carlo el otro testigo expresará de su puño en la antefirma que lo hace por sí como testigo y a nombre del otro o del otorgante que no sabe firmar.' " 1 Tratado de Notaría por M. Fernández Ca sado, 569.

Seguramente al cuidadoso estudio de la ley y de la prác tica que regía en el año 1866 en esta isla de Puerto Rico

794

se debió que los eminentes letrados que intervinieron en el citado caso de *Landrón et al.* v. *Navedo* no suscitaran esta cuestión de la falta de las firmas de los testigos en el poder para testar de que se trata.

Habiendo llegado a la conclusión de que el documento impugnado es válido por sí mismo, no es necesario considerar los demás errores que se señalan por los apelantes en su alegato.

El recurso establecido *debe ser declarado sin lugar y confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Aldrey y Texidor no intervinieron en la vista ni en la decisión de este caso.